UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROY D. COOK; CLINT A. COOK; PAUL BOWMAN; and JACK D. HYDE; | ) ) ) | |
| | ) | |
|     Plaintiffs, | ) | Civil Action |
| | ) | |
| vs. | ) | File No. |
| | ) | |
| E.R. SNELL CONTRACTORS, INC.; M.V.P. PIPING COMPANY, INC.; DEBORA J. DURHAM, Individually; DEBORA J. DURHAM, Personal Representative, ESTATE OF BILLY J. DURHAM, JR.; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; | ) ) ) ) ) ) ) ) ) ) ) | Federal Question Jurisdiction and Supplemental Jurisdiction<br><br>Fair Labor Standards Act<br><br>**JURY TRIAL DEMANDED** |
| | ) | |
|     Defendants. | ) ) | |

## PLAINTIFFS' JOINT COMPLAINT

## I.   INTRODUCTION.

1.    This civil action arises from an employment relationship between the

Plaintiffs and Defendants E.R. Snell Contractors, Inc., M.V.P. Piping

Company, Inc., Deborah Durham, and the Estate of Billy J. Durham, Jr., and

is necessitated by the aforementioned Defendants' intentional violations of

the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").  Defendant

Travelers Casualty And Surety Company Of America underwrote a payment

and performance bond and is thereby a surety on the public project and is

therefore liable for the Defendants' acts, omissions, and resulting damages.

2.     The Defendants' violations include but are not necessarily limited to: (1)

misclassification of the Plaintiffs as contractors rather than employees: (2)

the failure to pay wages at the statutory minimum rate; (3) forcing the

Plaintiffs to pay expenses that should be borne by the employers and

imposing chargebacks against the Plaintiffs that constitute unlawful

"kickbacks" and effectively reduce wages below the statutory minimum; (4)

the failure to pay overtime at the statutory rate and making unauthorized

deductions and taking "kickbacks" that reduce wages below the statutory

overtime rate; (5) retaliation against the Plaintiffs by firing them in response

to their requests to be paid in compliance with the law; and (6) the failure to

maintain proper time records for hours worked by the Plaintiffs.  All of the

foregoing acts had the effect of reducing the wages of Plaintiffs below the

statutory minimum wage and resulted in a failure of the Defendants to pay

overtime at the statutory rate.  Coincidentally, the Defendants willfully

violated the Davis-Bacon Act on the public project funded with federal aid

2

money by failing and refusing to pay the Defendants the area's "prevailing wages" under 40 U.S.C. § 3142(a) and id. § 3141(2)(B), including the requisite hourly wages and benefits such as healthcare insurance, retirement, and vacation pay.

3.      The claims for relief herein include but are not necessarily limited to: (1) an action under the FLSA for violation of 29 U.S.C. § 206 by failure to pay the statutory minimum wage; (2) an action under the FLSA for violation of 29 U.S.C. § 207 by failure to pay overtime wages at the statutory rate; (3) an action under the FLSA for violation of 29 U.S.C. § 215(a) by retaliation against the Plaintiffs; (4) an alternative claim under the Georgia Minimum Wage Law, O.C.G.A. §§ 34-4-1 *et seq*. for failure to pay the state minimum wage in any instance that is outside the purview of the FLSA; (5) an alternative cause of action for breach of contract under state law for failure to pay straight hourly wages that are outside the purview of the FLSA; and (6) an alternative cause of action for unjust enrichment and restitution under state law for failure to pay straight wages and failure to cover expenses that are outside the purview of the FLSA.

4.      The remedies sought herein include but are not necessarily limited to: (1) a judgment for compensatory damages for all unpaid wages at the minimum

rate; (2) a judgment for compensatory damages for all unpaid overtime wages at the statutory rate of one and a half times the regular hourly rate; (3) a judgment for damages for retaliation; (4) an award of liquidated damages in an equal amount of all minimum wages and overtime wages recovered under the FLSA; (5) a judgment for damages on any minimum wage claims that fall outside the purview of the FLSA and are actionable under the Georgia Minimum Wage Law along with liquidated damages, fees, and costs; (6) a judgment for compensatory damages on all state contract and quasi-contract claims that fall outside the purview of the FLSA for unpaid wages at straight time and expenses that have not been reimbursed along with prejudgment interest; (7) an award of fees, costs, and recovery of unlawful deductions as part of the wage loss under 29 U.S.C. § 216; and (8) an award of costs under 28 U.S.C. § 1920.

## II.    PARTIES, JURISDICTION, AND VENUE.

5.    Plaintiff Roy D. Cook is a natural person and a citizen of the State of Georgia.

6.    Plaintiff Clint A. Cook is a natural person and a citizen of the State of Georgia.  Mr. Cook is commonly known as "Drew".

7.  Plaintiff Paul Bowman is a natural person and a citizen of the State of Georgia.

8.  Plaintiff Jack D. Hyde is a natural person and a citizen of the State of Georgia.  Mr. Hyde is commonly known as "Don".

9.  Defendant E.R. Snell Contractors, Inc. is a Georgia corporation and a citizen of Georgia.  This Defendant is domiciled at the site of its principal and registered offices, which are both at 1785 Oak Road, Snellville, Gwinnett County, GA 30078.  This Court can exercise personal jurisdiction over the Defendant because it is physically present in this state and the Plaintiffs can serve it with process in this state through its registered agent, Ms. Christina Jay, at the aforementioned address.

10. Defendant M.V.P. Piping Company, Inc. is a Georgia corporation and a citizen of Georgia.  This Defendant is domiciled at the site of its principal and registered offices, which are both at 2855 Emerald Lane, Acworth, Cherokee County, GA 30102.  This Court can exercise personal jurisdiction over the Defendant because it is physically present in this state and the Plaintiffs can serve it with process in this state through its registered agent, Ms. Debora J. Durham, at the aforementioned address.

11.     Defendant Debora J. Durham is a natural person and a citizen of the State of

Georgia.  The Defendant is domiciled at 2855 Emerald Lane, Acworth,

Cherokee County, GA 30102.  This Court can exercise personal jurisdiction

over the Defendant because she is physically present in this state and the

Plaintiffs can serve her with process within this state.

12.     Defendant Debora J. Durham, Personal Representative, Estate of Billy J.

Durham, Jr., is a natural person and a citizen of the State of Georgia and she

serves as the personal representative, executor, administrator, survivor, or

next friend of the estate of her late husband, Billy J. Durham, Jr.  In her

official capacity, she is authorized to administer the estate, sue on its behalf,

and be sued as its representative.  The Defendant is domiciled at 2855

Emerald Lane, Acworth, Cherokee County, GA 30102.  This Court can

exercise personal jurisdiction over the Defendant because she is physically

present in this state and the Plaintiffs can serve her with process within this

state.

13.     Defendant Travelers Casualty And Surety Company Of America is a

Connecticut corporation and a citizen of Connecticut.  The Defendant's

principal office is in Hartford, CT but is has a registered office at Suite 400,

2 Sun Court, Peachtree Corners, Gwinnett County, GA 30092.  This Court

can exercise personal jurisdiction over the Defendant because it is physically

present in this state and the Plaintiffs can service it with process in this state

through its registered agent, Corporation Service Company, at the

aforementioned address.

14.     This Court has jurisdiction over the subject matter of this action under 28

U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201 *et*

*seq*.

15.     This Court can exercise supplemental jurisdiction over all state law claims

under 28 U.S.C. § 1367 because they arise from a common nucleus of facts

with the federal claims and have virtually all the same parties and facts in

common.

16.     Venue is proper in this district under 28 U.S.C. 1391(b)(1) because the

corporate Defendants' registered offices are physically present in the district

and they are therefore domiciled in the district.  Further, the individual

Defendants are domiciled in the district as well.

17.     The Plaintiffs' joinder of claims is proper under Fed. R. Civ. P. 20 because

they assert a right to relief jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions

or occurrences.

18. The Plaintiffs present their claims as individuals and not as representatives of a class in a collective action or as persons consenting to join a collective action, and therefore a consent to join form is not required under 28 U.S.C. § 216.

### III.   THE MATERIAL FACTS.

19. Defendant E.R. Snell Contractors, Inc. ("E.R. Snell") is a highway and bridge contractor.

20. Defendant E.R. Snell won a bid to perform certain work for the Georgia Department of Transportation ("Georgia DOT") on S.R. 369 in Forsyth County that entails construction of a bridge over Settingdown Creek (the "Bridge Project").

21. As the prevailing bidder and general contractor for the Bridge Project, Defendant E.R. Snell was required to post a bond for payment and performance.

22. Defendant Travelers Casualty And Surety Company Of America ("Travelers") issued bond no. 107159173 with respect to the Bridge Project for the benefit of E.R. Snell's employees, agents, contractors, subcontractors, and creditors.

23.    The Bridge Project also entailed the relocation of utilities running alongside S.R. 369 and the bridge to accommodate the new construction.

24.    Defendant M.V.P. Piping Company, Inc. ("M.V.P.") is a utility contractor that specializes in water and storm sewer removal, relocation, and installation.  It is a pre-qualified utility contractor for the Georgia DOT.

25.    Defendant M.V.P. also has Disadvantaged Business Entity ("D.B.E.") status.

26.    Defendant M.V.P. apparently prevailed on a bid to serve as a subcontractor to E.R. Snell to relocate utilities on the Bridge Project

27.    A non-party, Turpin, Inc. ("Turpin"), obtained a contract to perform horizontal boring work to permit relocation of utilities.

28.    Turpin commenced a horizontal bore project on the jobsite, encountered substantial problems, and did not successfully complete the boring project.

29.    Turpin left the jobsite with the boring project incomplete after much difficulty and much delay, and an apparent dispute with Defendants E.R. Snell and M.V.P.

30.    Defendants E.R. Snell and M.V.P. pursued another boring contractor to replace Turpin on the Bridge Project.

31.    Billy J. Durham, Jr., an officer and employee of Defendant M.V.P. and the late husband of Defendant Debora Durham, spoke with Plaintiff Roy Cook

about the project.

32. Defendant M.V.P. and a non-party entity controlled by Plaintiff Roy Cook attempted to form a contract for boring work on the Bridge Project.

33. But their attempt to contract failed and was void *ab initio* due to mutual mistake of fact and law, impossibility, failure of a condition precedent, and illegality, among other things.  The non-party company did not have a pre-qualification or certification to perform boring and utility work on Georgia DOT projects and could not legally perform boring work on a Georgia DOT project without them.

34. In addition, the company did not have adequate worker's compensation and commercial general liability insurance.

35. Defendant M.V.P. had a Georgia DOT utility contractor prequalification and certification but did not have boring equipment and a boring crew.

36. Defendants M.V.P. and E.R. Snell could have pursued a boring contractor with a DOT utility certification to perform the boring work but did not.

37. Instead, Billy Durham conferred with E.R. Snell about hiring the Plaintiffs as employees of M.V.P. and having them perform the work, and E.R. Snell concurred with Durham.

38. The Plaintiffs filled out documents for Defendant M.V.P. including a job

application and tax forms and provided social security numbers and other

pertinent information an employee would generally provide an employer.

39. The Plaintiffs appeared on the work site on or about August 27, 2020

believing that they were employees and acting as employees of M.V.P.

40. The Plaintiffs were supervised by a job superintendent from M.V.P. named

Will Kent during the early phase of the boring project.

41. Defendant M.V.P. set the terms and conditions of employment for the

Plaintiffs, set the employment policy, set the payment policy, made the

decisions on when payroll was made or not made, made the decision on

whether to include or exclude payment for overtime, made decisions on

what resources were provided to the employees, the resources the employees

had to supply and pay for to do their job, maintaining time records, and was

an employer of the Plaintiffs at all time.

42. Defendant Debora Durham set the terms and conditions of employment for

the Plaintiffs, set the employment policy, set the payment policy, made the

decisions on when payroll was made or not made, made the decision on

whether to include or exclude payment for overtime, made decisions on

what resources were provided to the employees, the resources the employees

had to supply and pay for to do their job, maintaining time records, and was

an employer of the Plaintiffs at all time.

43. Defendant Billy J. Durham, Jr. set the terms and conditions of employment for the Plaintiffs, set the employment policy, set the payment policy, made the decisions on when payroll was made or not made, made the decision on whether to include or exclude payment for overtime, made decisions on what resources were provided to the employees, the resources the employees had to supply and pay for to do their job, maintaining time records, and was an employer of the Plaintiffs at all time.

44. The superintendent from M.V.P., Will Kent, appeared at the job site for several weeks and supervised the Plaintiffs providing them oversight, direction, instruction, and assistance.

45. Plaintiff Roy Cook was a manual laborer on the Bridge Project and his primary duties were operating the boring machine and other equipment such as and excavator and skidsteer loader.  He also performed other, secondary roles as necessary such as assisting with water pumping operations, handling auger sections and casing sections during the boring process, answering calls from the Defendants and responding to their inquiries, reporting to the Defendants, meeting with and seeking instructing and advice from executives from E.R. Snell and M.V.P., conferring with and seeking

instruction advice from supervisors from E.R. Snell and M.V.P., and supplying the Defendants with paperwork as instructed.

46. Plaintiff Paul Bowman was a manual laborer on the Bridge Project and his primary duty was operating equipment such as the excavator and skidsteer loader. He performed other, secondary roles as necessary such as answering calls from the Defendants, advising the Defendants of the things needed by the employees on the jobsite, and supplying the Defendants with paperwork as instructed.

47. Defendant Clint A. "Drew" Cook was a manual laborer on the Bridge Project and his primary duties included shoveling, moving materials and equipment, and handing and providing auger sections and casing sections during the boring process. He also performed other, secondary roles as necessary such as operating the skidsteer loader and other machines and assisting with water pumping operations.

48. Plaintiff Jack D. "Don" Hyde was a manual laborer on the Bridge Project and his primary duties included handling casing sections, auger sections, assisting with water pumping, and operating equipment such as a skidsteer loader. He also performed other, secondary roles as necessary such as moving and handling materials.

49.     The Plaintiffs logged all hours worked and turned in timesheets to M.V.P. and Debora Durham.

50.     Defendant M.V.P., acting through Debora Durham, signed and submitted U.S. Department of Labor Form WHD347 to government entities including the U.S. Department of Labor and the Georgia DOT, and to Defendant E.R. Snell.

51.     The aforementioned form is used by contractors on projects funded by federal money to certify compliance with the Davis-Bacon Act by making payroll and paying employees the "prevailing wages" in the area.

52.     The timesheets the Plaintiffs turned in reflected all the hours worked by the Plaintiffs and included substantial overtime hours.

53.     Defendant Debora Durham instructed the Plaintiffs to eliminate all hours worked over 40 hours in a week on documents submitted to her but the Plaintiffs declined.

54.     Upon information and belief, some of the forms WHD347 signed and submitted by Defendant Debora Durham omitted the overtime hours stated in the timesheets submitted to M.V.P. by the Plaintiffs.

55.     Upon information and belief, Defendant M.V.P. kept two conflicting sets of time records on the Plaintiffs.

14

56. Defendant M.V.P. and the Durham Defendants represented to the U.S. Department of Labor and the Georgia DOT that the Plaintiffs and their non-party co-workers were employees.

57. Defendant M.V.P. and the Durham Defendants represented to the U.S. Department of Labor and the Georgia DOT that M.V.P. was timely paying the Plaintiffs the sums reflected on the WHD347 forms signed and submitted when in fact they were not making all the payment represented.

58. Defendant M.V.P. and the Durham Defendants submitted the WHD347 forms with signatures on them electronically over wires that are articles of interstate commerce and/or through the United States mail.

59. Defendant M.V.P. made some payroll payment to the Plaintiffs early in the project but did not remit complete payment for all hours worked.

60. The boring project went badly for a number of reasons beyond the Plaintiffs' control, including the prior placement of fine aggregate (believed to be "M10") in the operations pits that choked the pumps needed to handle the immense amounts of groundwater present on the jobsite.

61. The Plaintiffs turned in time sheets with all straight time and overtime, but M.V.P. frequently complained about the amount of overtime being worked.

62. The sporadic and incomplete payments to the Plaintiffs and their burden of

providing equipment and paying expenses on the job that M.V.P. and E.R. Snell should have been paying led to friction between the parties.

63. The Plaintiffs made it known to Defendant M.V.P. and Defendant E.R. Snell that they were going to quit and leave because they were not getting paid and they were accruing debts in order to perform their work.

64. Plaintiff Roy Cook conferred with the president and CEO of E.R. Snell and conferred with the Durham Defendants of M.V.P. about payment and continued employment.

65. Defendant E.R. Snell agreed to advance payroll to the Plaintiffs and money and money to reimburse urgent expenses provided that M.V.P. retained Plaintiffs as employees to perform the auger recovery, pilot bore, and a re-bore.

66. Defendant E.R. Snell issued one or more checks to ensure that payroll was made and that the Plaintiffs remained on the jobsite and continued working.

67. Defendant E.R. Snell's role shifted upon making payments to cover the Plaintiff's payroll and expenses and it took a more direct role in advising, directing, and supervising the work of the Plaintiffs once it had to start advancing payroll to the Plaintiffs because M.V.P. would not or could not.

68. Defendant E.R. Snell's personnel, including the superintendent Joseph

"Joey" Martin, a supervisor name "Taylor", and company executives then interacted with the Plaintiffs more frequently and assertively and M.V.P. and the Durham Defendants interacted, advised, and supervised less.

69.   On a date uncertain, Defendant M.V.P. removed its superintendent, Will Kent, form the jobsite and then the only superintendent the Plaintiffs saw was that of E.R. Snell.

70.   Defendant E.R. Snell, acting through its CEO, Scott Briscoe, and its CFO, Jordan Snell, promised Roy Cook and the other Plaintiffs that they would be paid if they remained on the job.

71.   Defendant E.R. Snell had one or more supervisors on the project for the duration and the supervisors provided instruction, advice, and assistance to the Plaintiffs in performing their work.

72.   During the latter phase of Plaintiff's presence on the jobsite, Defendant E.R. Snell set the terms and conditions of employment for the Plaintiffs, set the employment policy, set the payment policy, made the decisions on when payroll was made or not made, made the decision on whether to include or exclude payment for overtime, made decisions on what resources were provided to the employees, the resources the employees had to supply and pay for to do their job, and was an employer of the Plaintiffs.

73.     Even after Defendant E.R. Snell took the dominant role as the employer of the Plaintiffs, M.V.P. and E.R. Snell still failed to pay the Plaintiffs their regular wages and overtime wages regularly, failed to cover or reimburse expenses or the expenses the Plaintiffs incurred for the benefit of the employers, and it caused additional friction that intensified into December 2020 and January 2021.

74.     The Plaintiffs had multiple discussions with personnel at Defendant E.R. Snell and M.V.P. about leaving the job but were promised that they would be paid if they stayed on the job.

75.     Defendant M.V.P. only provided some equipment to the Plaintiffs to enable them perform their jobs, such as an excavator.

76.     Defendant M.V.P. asserted s chargeback for the cost of providing the excavator to the Plaintiffs even though the Plaintiffs were employees and used it for the benefit of Defendants M.V.P. and E.R. Snell.

77.     Defendant E.R. Snell provided only some of the equipment, materials, and consumables such as fuel and gravel that the Plaintiffs needed to perform their work.

78.     Plaintiff Roy Cook incurred a substantial amount of expense by providing equipment that he owned personally and equipment that he rented.  He also

bought fuel, other consumables, and incurred substantial debt with a number of vendors that have still not been paid.

79. Despite all the hardships, the Plaintiffs remained on the jobsite in an effort to complete the bore and because they had been promised payment if they would complete the bore.

80. The Plaintiffs finally completed the bore after many hours of labor and much hardship in January 2021 and called for an inspection and certification by E.R. Snell, the DOT, and Forsyth County.

81. While the Plaintiffs awaited inspection and certification of the completed bore it rained heavily, which upon information and belief contributed to delays in the inspection and certification process.

82. While awaiting inspection and certification someone from M.V.P. or E.R. Snell took it upon themselves to try to remove the auger from the new casing and damaged a large section of auger in the process.

83. The Plaintiffs consistently pushed for payment and requested payment again when the bore was completed but still have not been paid.

84. Defendant M.V.P. and Debora Durham, with the knowledge and approval of E.R. Snell, retaliated against the Plaintiffs for asserting their rights to payment of wages and overtime and reimbursement of the expenses they had

to advance by terminating them in January 2021 using various pretextual

excuses.

85.     The Defendants forced Plaintiffs Roy Cook and Clint. A "Drew" Cook to

work off the clock in January 2021 to perform work that benefitted the

Defendants, such as recovery of the boring auger in the casing which was

necessary to complete the project an allow installation of the utilities.

86.     Defendant M.V.P. Piping and the Durham Defendants are chronic, serial,

long term, bad faith violators of the FLSA.  They had approximately 4 other

crews working on other projects at the same time the Plaintiffs worked for

them and they misclassified those other, non-party employees as contractors,

paid them wages without withholding taxes as is required for employees,

they issue them a Form 1099 instead of a W-2 at year end, and have

systematically failed to pay them overtime as well.

87.     The Defendants herein misclassified the Plaintiffs as contractors when it

suited their purposes when they were really employees.

88.     The Defendants are trying to have it both ways but simply cannot do so

under federal or state law.

89.  To deny that the Plaintiffs are employees is to admit that Defendants M.V.P., Debora Durham, and Billy J. Durham willfully lied about their status as employees to the State of Georgia and the United States.

90.  Defendants M.V.P. and Debora Durham submitted the completed forms WHD347 to the State of Georgia and the United States via articles of interstate commerce including cables, wires, and mail.

91.  False statements, such as certifying a payroll when it has not been paid as represented or paid at all is proscribed in the United States Code at 18 U.S.C. § 1001.  It is not necessary for a statement to be made under oath to constitute the crime of making false statements to the government.

92.  Wire fraud is proscribed in the United States Code at 18 U.S.C. § 1343.

93.  Mail fraud is proscribed in the United States Code at 18 U.S.C. § 1341.

94.  A conspiracy to commit mail fraud and/or wire fraud is proscribed in the United States Code at 18 U.S.C. § 371.

95.  Perjury is proscribed in the United States Code at 18 U.S.C. § 1621.

96.  The criminal penalty provision of the FLSA in 29 U.S.C. § 216(a) proscribes willful violations or violations through reckless disregard for the requirements of the Act and authorizes a fine and imprisonment as punishment.

97.    The Plaintiffs have not foreclosed the prospect of a federal whistleblower action under the False Claims Act for violations of the Davis-Bacon Act by Defendants and expressly reserve their rights.

98.    The crimes of false statements, wire fraud, mail fraud, conspiracy to commit the aforementioned crimes, and perjury are all predicate crimes for federal and state RICO actions.

## IV.    CLAIMS FOR RELIEF.

### COUNT 1
**ACTION UNDER THE FLSA FOR MINIMUM WAGE COMPENSATION**
**(All Plaintiffs vs. All Defendants)**

99.    The Plaintiffs incorporate by reference the allegations contained in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

100.    The Plaintiffs state this cause of action in addition to or in the alternative to all other causes of action herein.

101.    The economic realities demonstrate that each and every Defendant was an "employer" of the Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d) and (g).

102.    The economic realities include that Defendant M.V.P. and the Durham Defendants specifically hired the Plaintiffs as employees in lieu of finding another contractor that was prequalified and certified as a utility contractor

by the Georgia DOT and did so with the knowledge and approval of
Defendant E.R. Snell.

103.   The economic realities are that Defendant M.V.P. and the Durham

Defendants provided a supervisor to provide the Plaintiffs with instruction,

supervision, and instruction and they provided them with equipment and

other resources to perform their work for the benefit and convenience of the

Defendants.  They also made some payments of payroll to the Plaintiffs and

their non-party co-workers on the jobsite and made promises of payment if

the Plaintiffs would stay on the job.

104.   The economic realities further entail that Defendant E.R. Snell made payroll

to the Plaintiffs and covered some expenses on the condition that the

Plaintiffs remain on the job.  The Defendant thereby assumed control over

pay policy, whether payment was made, what payment was made, hiring,

firing, and retention, the resources made available to the Plaintiffs for use in

doing their jobs, and whether the Plaintiffs paid expenses that benefited the

employers.

105.   In addition, the economic realities include that Defendant E.R. Snell

assumed a more dominant role as an employer after making the payroll and

covering expenses and provided supervisors to advise, instruct, and assist the

Plaintiffs in performing their boring work.  This Defendant also provided the Plaintiffs with other resources for them to perform work for the benefit and convenience of E.R. Snell including fuel and other supplies, a water pump, and gravel for the pits used to operate the boring equipment.

106. Oher economic realities are that Defendant E.R. Snell, acting through its CEO, Scott Briscoe, and the CFO, Jordan Briscoe, made promises to the Plaintiffs that they would be paid if they stayed on the jobsite.  Defendant E.R. Snell's supervisor named Joseph "Joey" Martin also made promises to the Plaintiffs of payment if they remained on the project.

107. Another material economic reality is that Defendant M.V.P. had the Plaintiffs fill out job applications.  Defendant M.V.P. and the Durham Defendants subsequently submitted U.S. Department of Labor Forms WHD347 identifying the Plaintiffs as employees of M.V.P. and provided them to state and federal agencies with the knowledge and approval of Defendant E.R. Snell to falsely certify compliance with the Davis-Bacon Act.

108. The Durham Defendants are also statutory employers because they established and enforced unlawful policies for M.V.P.; directly or indirectly provided instructions to the Plaintiffs on work schedules and the time, place

and manner of their work; made decisions on the hiring and firing of employees; and made decisions on the terms and conditions of employment, including compensation and work conditions.

109. The Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 207(a)(1).

110. The Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

111. The Plaintiffs are "covered" employees under the FLSA and protected by its minimum wage and record keeping requirements.

112. The Plaintiffs were entitled under law to be paid at least the minimum wage for all hours worked up to the forty (40) hour threshold in a workweek.

113. The Defendants failed to pay the Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

114. The Defendants required the Plaintiffs to pay for equipment, fuel, supplies, and other expenses and also imposed chargebacks on the Plaintiffs for equipment provided by the Defendants to perform work that benefitted the Defendants, all of which caused Plaintiffs' wages to drop below the minimum wage.

115.   None of the Defendants sought and obtained specific legal advice pertaining to their relationship with the Plaintiffs under the FLSA, coverage under the FLSA, and their duties to the Plaintiffs under the FLSA.

116.   The Defendants knowingly, intentionally, and willfully violated the FLSA in bad faith by not paying the Plaintiffs the minimum wage and there is no evidence that the Defendants acted in good faith and on reasonable grounds.

117.   Accordingly, the Plaintiffs are entitled to a judgment for all unpaid minimum wage compensation, an equal amount in liquidated damages, and an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

118.   Defendant Travelers, as the surety on the project, is liable to the Plaintiffs for all damages the same as the other Defendants herein.

**COUNT 2**
**ACTION UNDER THE FLSA FOR OVERTIME COMPENSATION**
**(All Plaintiffs vs. All Defendants)**

119.   The Plaintiffs incorporate by reference the allegations in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

120.   The Plaintiffs state this cause of action in addition to or in the alternative to all other causes of action herein.

121.  The economic realities demonstrate that each and every Defendant was an
      "employer" of the Plaintiffs within the meaning of the FLSA, 29 U.S.C. §
      203(d) and (g).

122.  The economic realities include that Defendant M.V.P. and the Durham
      Defendants specifically hired the Plaintiffs as employees in lieu of finding
      another contractor that was prequalified and certified as a utility contractor
      by the Georgia DOT and did so with the knowledge and approval of
      Defendant E.R. Snell.

123.  The economic realities are that Defendant M.V.P. and the Durham
      Defendants provided a supervisor to provide the Plaintiffs with instruction,
      supervision, and instruction and they provided them with equipment and
      other resources to perform their work for the benefit and convenience of the
      Defendants.  They also made some payments of payroll to the Plaintiffs and
      their non-party co-workers on the jobsite and made promises of payment if
      the Plaintiffs would stay on the job.

124.  The economic realities further entail that Defendant E.R. Snell made payroll
      to the Plaintiffs and covered some expenses on the condition that the
      Plaintiffs remain on the job.  The Defendant thereby assumed control over
      pay policy, whether payment was made, what payment was made, hiring,

firing, and retention, the resources made available to the Plaintiffs for use in doing their jobs, and whether the Plaintiffs paid expenses that benefited the employers.

125. In addition, the economic realities include that Defendant E.R. Snell assumed a more dominant role as an employer after making the payroll and covering expenses and provided supervisors to advise, instruct, and assist the Plaintiffs in performing their boring work. This Defendant also provided the Plaintiffs with other resources for them to perform work for the benefit and convenience of E.R. Snell including fuel and other supplies, a water pump, and gravel for the pits used to operate the boring equipment.

126. Oher economic realities are that Defendant E.R. Snell, acting through its CEO, Scott Briscoe, and the CFO, Jordan Briscoe, made promises to the Plaintiffs that they would be paid if they stayed on the jobsite. Defendant E.R. Snell's supervisor named Joseph "Joey" Martin also made promises to the Plaintiffs of payment if they remained on the project.

127. Another material economic reality is that Defendant M.V.P. had the Plaintiffs fill out job applications. Defendant M.V.P. and the Durham Defendants subsequently submitted U.S. Department of Labor Forms WHD347 identifying the Plaintiffs as employees of M.V.P. and provided

them to state and federal agencies with the knowledge and approval of Defendant E.R. Snell to falsely certify compliance with the Davis-Bacon Act.

128. The Durham Defendants are also statutory employers because they established and enforced unlawful policies for M.V.P.; directly or indirectly provided instructions to the Plaintiffs on work schedules and the time, place and manner of their work; made decisions on the hiring and firing of employees; and made decisions on the terms and conditions of employment, including compensation and work conditions.

129. The Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 207(a)(1).

130. The Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

131. The Plaintiffs are "covered" employees under the FLSA and protected by its overtime and record keeping requirements.

132. The Plaintiffs each frequently worked over forty (40) hours during a work week period and were entitled to overtime on all hours over the first 40 at the statutory rate of one and a half times the regular rate.

133.  Plaintiff Roy Cook worked at a regular rate of $25.00 per hour; Plaintiff Paul Bowman worked at a regular rate of $25.00 per hour; Plaintiff Jack D. Hyde worked at a regular rate of $20.00 per hour; and Plaintiff Clint A. "Drew" Cook worked at a regular rate of $15.00 per hour.

134.  The Defendants failed to pay the Plaintiffs the required overtime wage for each hour over forty (40) worked in a workweek in violation of 29 U.S.C. § 207.

135.  The Defendants required Plaintiffs to pay for equipment, fuel, supplies, and other expenses and also imposed chargebacks on the Plaintiffs for the use of equipment provided to them by the Defendants to perform their work, all of which caused Plaintiffs' wages to drop below the applicable overtime wage.

136.  The payments required by the Defendants and made by the Plaintiffs were primarily or entirely for the benefit and convenience of Defendants.

137.  The Plaintiff and are entitled to compensation for all overtime hours worked and reimbursement of all unlawful deductions pursuant to 29 U.S.C. § 216(b).

138.  None of the Defendants sought and obtained specific legal advice pertaining to their relationship with the Plaintiffs under the FLSA, coverage under the FLSA, and their duties to the Plaintiffs under the FLSA.

139.  The Defendants knowingly, intentionally, and willfully violated the FLSA in bad faith by not paying the Plaintiffs the minimum wage and there is no evidence that the Defendants acted in good faith and on reasonable grounds.

140.  Accordingly, the Plaintiffs are entitled to a judgment for compensatory damages for all unpaid overtime wages and an equal amount in liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).

141.  Defendant Travelers, as the surety on the project, is liable to the Plaintiffs for all damages the same as the other Defendants herein.

## COUNT 3
### ACTION UNDER THE FLSA FOR RETALIATION
### (All Plaintiffs v. All Defendants)

142.  The Plaintiffs incorporate by reference the allegations in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

143.  The Plaintiffs state this cause of action in addition to or the alternative to all other causes of action herein.

144.  Each Defendant is an "employer" of the Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

145.  The Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 207(a)(1).

146.  The Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

147.  The Plaintiffs are "covered" employees under the FLSA and protected by its minimum wage, overtime, and record keeping requirements as well as the Act's protections against employer retaliation against employees for asserting their rights.

148.  The Defendants failed to pay the Plaintiffs the statutory minimum wage for all hours worked and failed to pay them overtime wages for all overtime hours worked.

149.  The Plaintiffs requested payment from the Defendants, but all payment was not made.

150.  The Defendants induced the Plaintiffs to remain on the job with promises of future payment.

151.  The Plaintiffs completed the bore and requested payment.

152.  Defendant M.V.P. and the Durham Defendants retaliated against the Plaintiffs with the knowledge, approval, and complicity of E.R. Snell by

terminating them, withholding payment, barring them from collecting their property and rented equipment on the jobsite, mistreating and damaging expensive equipment that Plaintiff Roy Cook had on the website, and disparaging them.

153. The conduct of the Defendants was intentional and reckless, it was outrageous, and it was the proximate cause of severe emotional distress for each of the Plaintiffs.

154. The Plaintiffs anticipate that the Defendants will persist in their retaliation by filing counterclaims, claims of setoff and recoupment, and frivolous motions and defenses in this civil action.

155. Accordingly, the Plaintiffs are entitled to a judgment for compensatory damages for all unpaid overtime wages and an equal amount in liquidated damages, as well as reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b).  In addition, the Plaintiffs are entitled to an award of damages to be determined at trial for emotional distress.

156. Defendant Travelers, as the surety on the project, is liable to the Plaintiffs for all damages the same as the other Defendants herein.

## COUNT 4
### ACTION UNDER THE GEORGIA MINIMUM WAGE LAW
#### (All Plaintiffs vs. All Defendants)

157.   The Plaintiffs incorporate by reference the allegations in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

158.   The Plaintiffs state this cause of action in addition to or the alternative to all other causes of action herein.  This cause of action is exclusively applicable to any claims the Plaintiffs have that do not fall within the purview of the FLSA.

159.   Defendants M.V.P., the Durham Defendants, and E.R. Snell are employers within the meaning of the Georgia Minimum Wage Law ("GMWL"), O.C.G.A. §§ 34-4-1 *et seq*.

160.   The Plaintiffs are employees of the Defendants within the meaning of the GMWL.

161.   If any hours worked by any of the Plaintiffs are exempt under the FLSA or any Plaintiff's work is exempt from the purview of the FLSA, then such Plaintiff is covered by the GMWL.

162.   The Defendants failed to comply with O.C.G.A. § 34-4-3 because they did not pay the Plaintiffs the state statutory minimum wage for all hours worked.

163.   Thus, any Plaintiff or any hours of a Plaintiff not within the purview of the FLSA is within the purview of the Georgia Act and is compensable thereunder.

164. Accordingly, the Plaintiffs with claims that are compensable only under the GMWL are entitled to a judgment for damages for all hours worked at the state statutory rate, liquidated damages of an equal amount, an award of reasonable attorney's fees and costs.

165. Defendant Travelers, as the surety on the project, is liable to the Plaintiffs for all damages the same as the other Defendants herein.

**COUNT 5**
**BREACH OF CONTRACT**
**(All Plaintiffs vs. All Defendants)**

166. The Plaintiffs incorporate by reference the allegations in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

167. The Plaintiffs state this cause of action in addition to or the alternative to all other causes of action herein.  This cause of action is exclusively applicable to any claims the Plaintiffs have that do not fall within the purview of the FLSA or Georgia Minimum Wage Law.

168. The FLSA provides a remedy for wages not paid at the federal statutory minimum rate and for overtime not paid at the federal statutory rate but does not provide a remedy for a lack of compensation for hours worked on straight time, the first through the fortieth hour in a workweek, that are over the minimum wage rate.  State contract law therefore fills the gap.

169.   The Plaintiffs accepted an offer of employment from M.V.P., the Durham
       Defendants, and E.R. Snell, and completed tax forms and other documents
       for them early in their tenure that identified the Plaintiffs as employees.

170.   There was an implied contract between the Defendants as employers and
       Plaintiffs as employees for the Defendants to pay the Plaintiffs the agreed
       upon hourly wages.

171.   The Plaintiffs substantially performed by appearing on the jobsite and
       working but the Defendants breached the contract by failing to pay them.

172.   The Defendants' breach thereby caused the Plaintiffs to incur damages.

173.   Each of the Plaintiffs had an hourly rate above the federal statutory
       minimum wage rate.

174.   Plaintiff Roy Cook's hourly pay rate was $25.00 and he has FLSA protection
       for $7.25 for each hour worked up to 40 hours in a week, and therefore has
       contract damages of $17.75 per hour for all hours worked between hours 1
       and 40 in a workweek.

175.   Plaintiff Clint A. Cook's hourly pay rate of $15.00 and he has FLSA
       protection for $7.25 for each hour worked up to 40 hours in a week, and
       therefore has contract damages of $7.75 per hour for all hours worked
       between hours 1 and 40 in a workweek.

176.   Plaintiff Paul Bowman's hourly pay rate was $25.00 and has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $17.75 per hour for all hours worked between hours 1 and 40 in a workweek.

177.   Plaintiff Jack D. Hyde's hourly pay rate was $20.00 and has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $12.75 per hour for all hours worked between hours 1 and 40 in a workweek.

178.   The Defendants acted in bad faith, have been stubbornly litigious, and have caused the Plaintiffs unnecessary trouble and expense.

179.   Accordingly, the Plaintiffs are entitled to a judgment for damages in an amount proven at trial, prejudgment interest, and an award of reasonable attorney's fees, and costs.

180.   Defendant Travelers, as the surety on the project, is liable to the Plaintiffs for all damages the same as the other Defendants herein.

## COUNT 6
### UNJUST ENRICHMENT AND RESTITUTION
### (All Plaintiffs vs. All Defendants)

181.   The Plaintiffs incorporate by reference the allegations in paragraphs 19 through 98 above and rely on them as if set forth fully herein.

182.   The Plaintiffs state this cause of action in addition to or the alternative to all other causes of action herein.

183.   The FLSA provides a remedy for wages not paid at the federal statutory minimum rate and for overtime not paid at the federal statutory rate but does not provide a remedy for a lack of compensation for hours worked on straight time, the first through the fortieth hour in a workweek, that are over the minimum wage rate.  State contract law therefore fills the gap.

184.   The Plaintiffs and M.V.P., the Durham Defendants, and E.R. Snell had an agreement between them but it failed due to the Defendants' failure of consideration, the Defendants' fraud, and other grounds to be determined in discovery.

185.   The Plaintiffs conferred valuable benefits to M.V.P., the Durham Defendants, and E.R. Snell by providing their labor that is outside the purview of the FLSA and GMWL, materials, and advanced costs on behalf of the Defendants.

186.   Defendants M.V.P., the Durham Defendants, and E.R. Snell accepted the benefit conferred by the Plaintiffs with knowledge of their expectation of compensation.

187.  Each of the Plaintiffs had an hourly rate above the federal statutory minimum wage rate.

188.  Plaintiff Roy Cook's hourly pay rate was $25.00 and he has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $17.75 per hour for all hours worked between hours 1 and 40 in a workweek.

189.  Plaintiff Clint A. Cook's hourly pay rate of $15.00 and he has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $7.75 per hour for all hours worked between hours 1 and 40 in a workweek.

190.  Plaintiff Paul Bowman's hourly pay rate was $25.00 and has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $17.75 per hour for all hours worked between hours 1 and 40 in a workweek.

191.  Plaintiff Jack D. Hyde's hourly pay rate was $20.00 and has FLSA protection for $7.25 for each hour worked up to 40 hours in a week, and therefore has contract damages of $12.75 per hour for all hours worked between hours 1 and 40 in a workweek.

192.   The Defendants acted in bad faith, have been stubbornly litigious, and have

caused the Plaintiffs unnecessary trouble and expense.

193.   Accordingly, the Plaintiffs are entitled to a judgment for damages in an

amount proven at trial, prejudgment interest, and an award of reasonable

attorney's fees, and costs.

194.   Defendant Travelers, as the surety on the project, is liable to the Plaintiffs

for all damages the same as the other Defendants herein.

## V.    REQUESTS FOR RELIEF.

WHEREFORE, the Plaintiffs request the following relief with respect to

each cause of action:

(1)    That as to Count 1, the Court enter a judgment for all unpaid minimum wage

compensation, an equal amount in liquidated damages, and an award of reasonable

attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

(2)    That as to Count 2, a judgment for all unpaid overtime compensation at one

and a half times each Plaintiff's regular hourly rate, an equal amount liquidated

damages, and an award of reasonable attorneys' fees and costs pursuant to 29

U.S.C. § 216(b);

(3)     That as to Count 3, a judgment for all damages, including general damages for emotional distress, an equal amount in liquidated damages, and an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

(4)     That as to Count 4, the Court enter a judgment for damages for all wages above the statutory minimum wage not paid to the Plaintiffs, prejudgment interest, and an award of reasonable attorney's fees, and costs;

(5)     That as to Count 5, the Court enter a judgment for damages for all wages above the statutory minimum wage not paid to the Plaintiffs, prejudgment interest, and an award of reasonable attorney's fees, and costs; and

(6)     That this Court grant any and all other relief that it determines is just and appropriate.

Counsel for the Plaintiffs complied with local rules for format and font.

This 11th day of April, 2021.

*s/       Vincent M. Tilley            .*
Vincent M. Tilley, Ga. Bar No. 712237
Counsel For Plaintiffs

Suite 200
1870 The Exchange
Atlanta, GA 30339
Tel.: (770)-989-7334
vince@tilleylaw.net